## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | | |
|---|---|---|
| BILL ROSS, Individually and on Behalf of All Others Similarly Situated, | ) | Case No.: 18-cv-166 |
| | ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | **Jury Trial Demanded** |
| TRS RECOVERY SERVICES INC. and TELECHECK SERVICES INC., | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed its collection efforts into the District.

## PARTIES

3.      Plaintiff Bill Ross is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes, specifically, repairs on his personal vehicle.

5.      Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that he engaged in a consumer transaction.

6.      Defendant TRS Recovery Services, Inc. ("TRS") is a foreign corporation with its principal place of business located at 14141 Southwest Freeway, Suite 300, Sugarland, Texas 77478.

7.      TRS does substantial business in Wisconsin and maintains a registered agent for service of process in Wisconsin at Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

8.      TRS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9.      TRS is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

10.     TRS is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

11.     TRS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

12.     Defendant Telecheck Services, Inc. ("Telecheck") is a foreign corporation with its principal place of business located at 14141 Southwest Freeway, Suite 300, Sugarland, Texas 77478.

13.     Telecheck does substantial business in Wisconsin and maintains a registered agent for service of process in Wisconsin at Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

14.     Upon information and belief, Telecheck purchases and owns consumer debts and TRS collects those debts on Telecheck's behalf.

15.     The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6) (emphasis added); *see Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 172984 (M.D. Penn. Oct. 19, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697, at *20-22 (E.D. Penn. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.'  Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'").

16.     The primary purpose of Telecheck's business, and Telecheck's principal purpose, is the collection of consumer debts. *See Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1325-26 (7th Cir. 1997) (dishonored checks are "debts" under 15 U.S.C. § 1692a(5)).

17.     Telecheck and TRS are wholly owned subsidiaries of the First Data Corporation. The Form 424B3 First Data filed with the Securities and Exchange Commission states:

> Pursuant to final rules published by the CFPB [Consumer Financial Protection Bureau], in the areas of check verification and consumer debt collection, two of the Company's subsidiaries, Telecheck Services Inc. and TRS Recovery Services, Inc., are subject to CFPB oversight, supervision and examination.
>
> . . .
>
> The majority of the TeleCheck Services, Inc. ("Telecheck") business involves the guarantee of checks received by merchants.  If the check is returned, TeleCheck is required to purchase the check from the merchant at its face value and pursue collection from the check writer.  A provision for estimated check returns, net of anticipated recoveries, is recorded at the transaction inception based on recent history.

3

18.     Telecheck's principal purpose is the collection of debts. The primary purpose of like Telecheck is debt collection. *See, eg. Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and … '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (quoting Pl.'s Reply Br.)).

19.     Telecheck is also engaged in the business of a debt collector under Wisconsin law, in that it purchases and receives assignment of consumer debts that are in default at the time Telecheck acquires them.

20.     Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added). On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

21.     Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

22.     Telecheck is a "merchant" as defined in the WCA, as it has, or claims to have, taken assignment of the consumer debt arising from Plaintiff's defaulted check. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

23. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

24. The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

25. Telecheck engages third-party debt collectors like TRS, to collect consumer debts owed to Telecheck.

26. A company meeting the definition of a "debt collector" (here, Telecheck) is vicariously liable for the actions of a second company collecting debts on its behalf (here, TRS). *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

27. Telecheck is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

28. Sometime on or before September 18, 2017, Plaintiff brought his personal vehicle to Quick Motors, a Milwaukee mechanic shop, for mechanical repairs.

5

29.     Plaintiff approved a work order estimate for up to $159.00.  Plaintiff was not required to pay for the mechanical services at the time they were rendered.  Instead, Defendant billed Plaintiff after service.  Thus, payment was deferred by agreement.

30.     When Plaintiff picked up his car, he was told that the repair services cost $478.67.

31.     Not realizing the billed amount greatly exceeded the estimate, Plaintiff tendered a check in the amount of $478.67.

32.     Upon realizing the discrepancy, Plaintiff put a "Stop Payment" order on the check.

### *September 30, 2017 Letter*

33.     On or about September 30, 2017, TRS mailed a debt collection letter to Plaintiff regarding an alleged debt owed to Telecheck. A copy of this letter is attached to this complaint as Exhibit A.

34.     Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

35.     Upon information and belief, Exhibit A is a form debt collection letter used by Defendants to attempt to collect alleged debts.

36.     Upon information and belief, Exhibit A is the first debt collection letter TRS sent to Plaintiff regarding the alleged Telecheck debt.

37.     Upon information and belief, Exhibit A was the first written communication Plaintiff received from TRS regarding the alleged debt referenced in Exhibit A.

38.     Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

6

<u>Validation Notice</u>

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of the judgment and mail you a copy of such verification or judgment. If you request of this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

<u>Exhibit A</u>.

     39.    Immediately below the validation notice, <u>Exhibit A</u> contains the following:

If you have a dispute or inquiry, please write or fax to:
    TRS Recovery Services, Inc.
    P.O. Box 4812
    Houston, TX 77210-4812
    Fax: 402.916.8140

Or if you would like to complete the online inquiry or dispute form, please visit our website at www.firstdata.com/trsrecovery. The form may be faxed or mailed to the number/address provided.

<u>Exhibit A</u>.

     40.    The TRS Information Dispute webpage includes a link to the "Dispute Form" in *.pdf format. https://www.trsrecoveryservices.com/information-dispute.html (accessed Jan. 22, 2018). A copy of a screen shot of the webpage is attached to this complaint as <u>Exhibit B</u> and a copy of the Dispute Form is attached to this complaint as <u>Exhibit C</u>.

     41.    <u>Exhibit C</u> contains the following:

| Reason for Dispute |
| --- |
| Please write a detailed description of your dispute, including all check numbers, bank account numbers and dates involved. Also, please attach to this form copies of additional documentation that will help support your dispute, such as payment receipts, bank statements, etc. If you have a copy of a collection notice, you may also provide that document although you are not required to do so. |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |

7

Exhibit C.

42.     Exhibit C overshadows, contradicts, and conflicts with the straightforward dispute process statutorily mandated by the FDCPA because it implies to the unsophisticated consumer that he must include a reason for the dispute and a "detailed description of [the] dispute."

43.     Nothing in 15 U.S.C. § 1692g(a) requires the consumer to explain to the debt collector the reason for the dispute. In fact, the Seventh Circuit has held that a consumer may dispute a debt for any reason or no reason. *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 582 (7th Cir. 2010). *See also Frey v. Satter, Beyer& Spires*, 1999 U.S. Dist. LEXIS 6912 (N.D. Ill. Apr. 30, 1999); *Whitten v. ARS Nat'l Servs.*, 2002 U.S. Dist. LEXIS 10828 (N.D. Ill. June 17, 2002); *Mikolajczyk v. Universal Fid., LP*, 2017 U.S. Dist. LEXIS 24587, at *9 (E.D. Wis. Feb. 22, 2017).

44.     Exhibit A also contains the following:

Your file has been assigned to the Recovery Department where it will be given to a professional collection agent. Please be advised that we may take reasonable steps to contact you and secure payment of the balance in full or an understanding of why this transaction was stopped.

Exhibit A.

45.     The statement that "we may take reasonable steps to contact you and secure . . . an understanding of why this transaction was stopped," also conflicts with, contradicts, and overshadows the statutory validation notice because it implies to the unsophisticated consumer that he does not need to provide written notification of his dispute within the thirty day period.

46.     Additionally, by indicating that TRS and/or the "Recovery Department" "may take reasonable steps to contact you to secure payment of the balance in full or an understanding of why this transaction was stopped," Exhibit A is misleading as to whether or not TRS is actually demanding payment of the total amount due.

8

47.     The unsophisticated consumer may believe simply providing an explanation for why the transaction was stopped would result in TRS as well as Telecheck ceasing collection activities.

48.     Moreover, despite informing the consumer that the account has been "assigned" to the "Recovery Department," Exhibit A contains no explanation of what the Recovery Department is or what the consequence of the assignment of alleged debt to the Recovery Department may be.

49.     Exhibit A also contains the following:

| Orig. Creditor: | Quick Motors Inc. | Date Written | September 18, 2017 |
|---|---|---|---|
| Current Creditor: | Telecheck Services, Inc. | Check Number | 238 |
| | | Returned: | Stop payment |
| Principal Amount: | $478.67 | Reference #: | ████████5000 |
| Total Amount Due: | $478.67 | | |

Exhibit A.

50.     Although the "Principal Amount" is equal to the "Total Amount Due," Exhibit A separately itemizes a "Principal Amount," along with the "Total Amount Due."

51.     Itemizing the "Principal Amount," alongside the "Total Amount Due," implies to the unsophisticated consumer that the "Total Amount Due," may later exceed the "Total Amount Due," and threatens the unsophisticated consumer with the prospect that the "Total Amount" may be subject to increase because of an arbitrary collection fee.

***October 28, 2017 Letter***

52.     On or about October 28, 2017, less than thirty days after mailing Exhibit A, TRS mailed another debt collection letter to Plaintiff regarding the alleged Telecheck debt. A copy of this letter is attached to this complaint as Exhibit D.

53.     Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

9

54.     Upon information and belief, Exhibit D is a form debt collection letter used by TRS to attempt to collect alleged debts.

55.     Exhibit D is prominently labeled "SECOND NOTICE."

56.     Exhibit D also contains the following:

This is your final notice prior to assignment of this file to our Recovery Department. A professional collection agent will then contact you by telephone.

Exhibit D.

57.     The statement in Exhibit D that "this is your final notice prior to assignment of this file to our Recovery Department," directly conflicts and contradicts the statement in Exhibit A that the account had been "assigned to the Recovery Department." *Compare* Exhibit D *with* Exhibit A.

58.     The conflicting statements regarding the status of the file and whether it had been assigned to the "Recovery Department" are material statements.

59.     Because Exhibit A advised the consumer that a professional collection agent from the TRS "Recovery Department" would contact him to "secure . . . an understanding of why this transaction was stopped," the consumer may have been waiting from the TRS agent to call, and planning to raise his dispute at that time.

60.     Exhibit D, which would have been received shortly before the end of the validation period stated in Exhibit A, informs the consumer---who has been waiting for the TRS Recovery Department agent to call so that he may dispute his debt---that the file has not yet been assigned to the agent but that he would be contacted by telephone shortly thereafter.

61.     The implication that the consumer may dispute the debt by phone when a collection agent calls, is a materially misleading statement because it deceives the unsophisticated consumer into foregoing his rights to prevent the debt collector from assuming

10

the validity of the debt, as well as his rights to trigger verification of the debt by providing written notification within the thirty day validation period. *See* 15 U.S.C. § 1692g(a)(3), (4), and (5).

62. Exhibit D also contains the following:

## WE FULLY INTEND TO RESOLVE THIS DEBT

This is your final notice prior to assignment of this file to our Recovery Department. A professional collection agent will then contact you by telephone.

Exhibit D.

63. Exhibit D, which would have been received during the statutory validation period, contradicts and overshadows the statutory validation notice because the unsophisticated consumer would understand Exhibit D, which does not reference the consumer's rights to require the debt collector to verify the debt or cease its collection attempts, as demanding payment during the validation period.

64. Exhibit D also contains the following:

| Merchant: | Quick Motors Inc. | Date Written | September 18, 2017 |
| Current Creditor: | TeleCheck | Check Number | 238 |
| Amount: | $478.67 | Returned: | Stop payment |
| Returned Check Fee: | $0.00 | Reference #: | ███████5000 |
| | | | |
| Total Due: | $478.67 | | |

Exhibit D.

65. Exhibit D itemizes a "Returned Check Fee" in the amount of $0.00.

66. Itemizing a "Returned Check Fee" in the amount of $0.00 threatens the unsophisticated consumer with the possibility that Defendants will arbitrarily impose a "Returned Check Fee" if the consumer does not pay the debt in full. *See Tylke v. Diversified Adjustment Serv.*, 2014 U.S. Dist. LEXIS 153281, at *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion

11

of a collection fee, even one showing a balance of zero, could imply the future possibility of one.").

67.    Neither Defendant was the merchant or creditor at the time the check was dishonored and TRS---a licensed Collection Agency---cannot arbitrarily impose a returned check fee that was not incurred by the merchant or actually imposed by a financial institution.  *See* Wis. Admin. Code DFI-Bkg 74.11(2).

68.    A statement in a debt collection letter that the debt collector may impose fees that cannot be imposed violates the FDCPA as a matter of law. *Boucher v. Fin. Sys. of Green Bay*, No. 17-2308, 2018 U.S. App. LEXIS 1094 *9-10 (7th Cir. Jan. 17, 2018).

69.    By the time that Plaintiff attempted to exercise his rights to dispute the debt, the 30-day validation period had lapsed.

70.    The FDCPA does not allow debt collectors to pick and choose when they will provide verification and when they will not. *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003) (failing to direct consumers to communicate disputes in writing violated the FDCPA because, "[a]lthough a debt collector *may* provide verification upon *oral* notification of the dispute, the debt collector *must* provide verification upon *written* notification.") (emphasis in original); *see also Crafton v. Law Firm of Levine*, 957 F. Supp. 2d 992, 998 (E.D. Wis. July 9, 2013).

71.    Plaintiff was confused and misled by Exhibits A and D.

72.    The unsophisticated consumer would be confused by Exhibits A and D.

73.    Plaintiff had to spend time and money investigating Exhibits A and D, and the consequences of any potential responses to Exhibits A and D.

12

74.     Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of <u>Exhibits A and D</u>.

### *The FDCPA*

75.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems

13

important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

76.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

77.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

78.     15 U.S.C. § 1692e(2)(a) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

79.     15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

80.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

14

81.    15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

82.    15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

83.    15 U.S.C. § 1692g(a) states:

> (a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

84.    15 U.S.C. § 1692g(b) prohibits any collection activity which would "overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

### *The WCA*

85.    The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

15

86. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

87. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

88. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

89. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

90. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

91. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court

16

analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

92.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

93.     Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

94.     Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

95.     Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

96.     Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

97.     The policies and procedures of licensed collection agencies are governed, in part, by Wis. Admin. Code Ch. DFI-Bkg 74 ("Collection Agencies").

98.     With specifically enumerated exceptions, a licensed collection agency "may not charge the debtor any fee, handling charge, mileage costs or other out-of-pocket expenses incurred in the collection of an account." Wis. Admin. Code § DFI-Bkg 74.11(2)(a).

99.     As relating to checks returned to the licensee for any reason, including checks returned for not-sufficient funds ("NSF checks"), licensed collection agencies may charge

"actual charges assessed by a financial institution . . . provided the charge is not the result of a licensee prematurely depositing a post-dated check." Wis. Admin. Code § DFI-Bkg 74.11(2)(b).

100.    The Wisconsin Department of Financial Institutions has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

101.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

102.    Defendants' contradictory statements about whether Plaintiff's account had been assigned to TRS' "Recovery Department" are false, deceptive, misleading, and confusing statements intended to intimidate Plaintiff into paying the debt rather than disputing it. *See Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment.").

103.    The statement in Exhibit A, that the "Recovery Department" would "secure . . . an understanding of why the transaction was stopped" contradicts and overshadows the statutory validation notice, which requires that consumers dispute debts within thirty days, and that the communicate disputes in writing to trigger debt verification.

104.    The statement in Exhibit D that the file had not yet been assigned to the "Recovery Department" also contradicts and overshadows the statutory validation notice that was provided in Exhibit A because it implies to the unsophisticated consumer that he should dispute the debt orally when collection agent calls, presumably outside of the thirty-day validation period.

18

105.    Defendants violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692g(a)(3), 1692g(a)(4), 1692g(a)(5), and 1692g(b).

## COUNT II – FDCPA

106.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

107.    <u>Exhibit D</u>, which would have been received during the statutory validation period, contradicts and overshadows the statutory validation notice because the unsophisticated consumer would understand <u>Exhibit D</u>, which does not reference the consumer's rights to require the debt collector to verify the debt or cease its collection attempts, as demanding payment during the validation period.

108.    Defendants violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692g(b).

## COUNT III – FDCPA

109.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

110.    <u>Exhibits A, B, and C</u> contradict and overshadow the statutory validation notice by implying to the unsophisticated consumer that he must provide a reason for his dispute when he can dispute a debt for no reason at all.  *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 582 (7th Cir. 2010); *see Frey v. Satter, Beyer & Spires*, 1999 U.S. Dist. LEXIS 6912 (N.D. Ill. Apr. 30, 1999); *Whitten v. ARS Nat'l Servs.*, 2002 U.S. Dist. LEXIS 9385 (N.D. Ill. May 23, 2002); *Mikolajczyk v. Universal Fid., L.P.*, 2017 U.S. Dist. LEXIS 24587, at *5-6 (E.D. Wis. Feb. 22, 2017).

111.    Defendants violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692g(b).

## COUNT IV – FDCPA

112.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

19

113.     TRS is licensed as a Collection Agency pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

114.     <u>Exhibits A and D</u> falsely threaten the unsophisticated consumer with the prospect that Defendants may impose a "Returned Check Fee" even though Defendants did not intend to impose such a fee.

115.     <u>Exhibits A and D</u> falsely threaten the unsophisticated consumer with the prospect that Defendants may impose a "Returned Check Fee" even though Defendants could not impose such a fee under Wisconsin law. *Boucher v. Fin. Sys. of Green Bay*, No. 17-2308, 2018 U.S. App. LEXIS 1094 *9-10 (7th Cir. Jan. 17, 2018).

116.     Defendants violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692f, and 1692f(1).

## <u>COUNT V – WCA</u>

117.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

118.     TRS is licensed as a Collection Agency pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

119.     <u>Exhibits A and D</u> falsely threaten the unsophisticated consumer with the prospect that Defendants may impose a "Returned Check Fee" even though Defendants did not intend to impose such a fee.

120.     <u>Exhibits A and D</u> falsely threaten the unsophisticated consumer with the prospect that Defendants may impose a "Returned Check Fee" even though Defendants could not impose such a fee under Wisconsin law.

121.     Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT VI – WCA

122.   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

123.   Count VI is brought against Defendant TRS.

124.   TRS is licensed as a Collection Agency pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

125.   Exhibits A-D violate the FDCPA.

126.   TRS violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

127.   Plaintiff brings this action on behalf a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a series of collection letters by TRS in the form of Exhibit A and Exhibit D, (d) seeking to collect a debt for personal, family or household purposes, (e) on or after January 30, 2017 and up to and including January 30, 2018, (f) that were not returned by the postal service.

128.   The Class is so numerous that joinder is impracticable.   Upon information and belief, there are more than 50 members of the Class.

129.   There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A-D violate the FDCPA and/or the WCA.

130.   Plaintiff's claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

21

131. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

132. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

133. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 30, 2018.

**ADEMI & O'REILLY, LLP**

By:  /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

22